## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| EDWARD E.,[1] ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | No. 21-1203-JWL |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614, Title II and Title XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.     Background**

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff filed applications for DIB and SSI benefits. (R. 363-70). ALJ Pottinger issued a decision on July 25, 2019, finding Plaintiff not disabled within the meaning of the Act. (R. 161-77). On appeal, the Appeals Council vacated the decision and remanded for further consideration of Plaintiff's mental impairments and maximum residual functional capacity (RFC). Id. 185-86. On remand, ALJ Toth conducted further proceedings and again issued a decision finding Plaintiff not disabled. Id. 12-27. After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ erred in evaluating his allegations of symptoms requiring additional bathroom breaks during a flare-up of colitis.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the

evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals

3

the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the errors alleged in the order presented in Plaintiff's Social Security Brief.

**II.   Discussion**

Plaintiff notes that although the first report of symptoms from colitis in the record was in 2011, he testified he had surgery for the problem in 2008 and he testified he currently has bad days with flare-ups of his colitis requiring six to ten restroom breaks each day which occur every couple of weeks and last a couple of days each time.  (Pl. Br. 12).  He claims the ALJ failed to provide reasons for discounting these specific

allegations of limitations related to colitis as is required by Social Security Ruling (SSR) 16-3p, Brownrigg v. Berryhill, 688 F. App'x 542, 546 (10th Cir. 2017), and decisions by courts of this district including Jamie N. v. Saul, Civ. A. No. 20-1164-JWL, 2021 WL 2454427, at *2 (D. Kan. June 16, 2021).

Plaintiff acknowledges that the ALJ discussed his allegations and found "this is not work preclusive, and the rate of flare-up is not necessarily supported at that level of frequency or severity." (Pl. Br. 13) (quoting R. 19). He argues the ALJ's finding suggests some level of frequency and intensity and cites this court's decision in Andria N.C. v. Saul, Civ. A. No. 20-1163-JWL, 2021 WL 2222681, at *4 (June 2, 2021) for the proposition that the ALJ should have included an RFC limitation for the use of restrooms. Id. at 14. He argues the ALJ never explained how she assessed the allegations of limitations during flare-ups. Id. Plaintiff explains how in his view the ALJ should have assessed the allegations and then argues,

> Even if the ALJ appropriately determined that the specific frequency and intensity of [Plaintiff]'s allegations were "not necessarily supported," she was still required to explain why she ultimately concluded that Plaintiff]'s colitis flare-ups with related limitations did not exist, or that he required no additional restroom breaks at all.

Id. at 18.

The Commissioner responds that "the ALJ fully complied with the regulations and SSR 16-3p when evaluating Plaintiff's intestinal symptoms and alleged limitations." (Comm'r Br. 8). She argues, "The ALJ specifically addressed Plaintiff's history of diverticulitis, colitis, and remote colon surgery … [and] testimony in 2020 about flare-ups where, for one or two days, he allegedly needed to use the restroom six to ten times

5

per day." Id.  She cited the ALJ's citation to evidence of treatment for these impairments, "lack of major abnormalities on imaging studies, the lack of specialist evaluation or treatment, the lack of significant weight loss from intestinal issues, and the lack of recent medical evidence of symptoms supporting Plaintiff's testimony." (Comm'r Br. 8-9) (citing R. 21).  She points out that no medical opinion included a need for additional restroom breaks.  Id. at 9.  She argues, "The ALJ's rationale and conclusions are thus sufficiently articulated to permit review; nothing more was required."  Id.  After discussing record evidence supporting the ALJ's findings, the Commissioner concludes, "In sum, the ALJ's evaluation of Plaintiff's subjective complaints, and the ensuing RFC finding, were reasonable in view of this record, and legally sound.  Plaintiff has not carried his burden of proving otherwise."  Id. at 14.

### A.   Standard for Evaluating Allegations of Symptoms

An ALJ's evaluations of a claimant's allegation of symptoms are generally treated as binding on review.  Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983).  Such "determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence.  Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.  Therefore, in reviewing the ALJ's evaluations, the court will usually defer to the ALJ on matters involving witness allegations.  Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994). However, such findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  Wilson, 602 F.3d at 1144

(quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173 (same).

The Tenth Circuit has explained the analysis for considering subjective allegations regarding symptoms. Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability. Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain. This court has stated: The framework for the proper analysis of Claimant's evidence of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

Thompson, 987 F.2d at 1488(citations and quotation omitted).

In evaluating a claimant's allegations of symptoms, the court has recognized a non-exhaustive list of factors which should be considered. Luna, 834 F.2d at 165-66; see also 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).[2]

The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating a claimant's allegations of symptoms which overlap and expand upon the factors stated by the court:  Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i-vii), 416.929(c)(3)(i-vii).

### B.     The ALJ's Relevant Findings

As Plaintiff argues, the ALJ found Plaintiff has colitis among her impairments which are severe within the meaning of the Act and the regulations.  (R. 14).  She found

---

[2] Luna, Thompson, and Kepler, were decided when the term used to describe the evaluation of a claimant's allegations of symptoms resulting from her impairments was "credibility determination."  Although that term is no longer used, the applicable regulation never used that term and the procedure for evaluating a claimant's allegations of symptoms has not significantly changed.  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,871 (Jan. 18, 2017) (codified at 20 C.F.R. § 404.1529).  Moreover, the Tenth Circuit held its approach to credibility determination was consistent with the approach set forth in SSR 16-3p. Brownrigg v. Berryhill, 688 F. App'x. 542, 546 (10th Cir. 2017).  Therefore, the three-step framework set out in Luna, based on 20 C.F.R. § 404.1529 (2017) is still the proper standard to be used as explained in the regulations in effect on March 17, 2021, when this case was decided.  Nonetheless, to the extent that, and only to the extent that "subjective measures of credibility that are peculiarly within the judgment of the ALJ;" Kepler, 68 F.3d at 391; relate to an examination of a claimant's character, it is specifically prohibited by SSR 16-3p, and is no longer a valid factor to be considered.

8

Plaintiff does not have an impairment or combination of impairments which meets or medically equals the severity of any listed impairment. Id., at 15. In making that finding, the ALJ specifically discussed Listing 5.06, Inflammatory bowel disease, which includes colitis and noted that his condition does not meet the severity of any of the criteria of 5.06A or 5.06B. Id., at 16.

The ALJ assessed Plaintiff with the RFC to perform a limited range of sedentary work. Id., at 17-18 (finding no. 5). She stated she had considered Plaintiff's allegations of symptoms "based on the requirements of 20 CFR [§§] 404.1529 and 416.929 and SSR 16-3p." Id., at 18. She explained the Commissioner's procedure for evaluating symptoms and stated her conclusion that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Id., at 19.

She summarized Plaintiff's allegations of symptoms. Specifically, as relevant here, she noted Plaintiff's testimony of "a weight increase due to a lack of activity" but found "no indication in the record that such activity has been suspended by a medical provider's advice." (R. 19). She noted Plaintiff's claim "he had been advised not to stand more than 30 minutes at one time, which is not necessarily specifically supported."[3] Id. She summarized his allegations regarding colitis.

---

[3] The court notes that in its summary here, other than the ALJ's assessment of colitis, it is also specifically noting the ALJ's findings tending to support her finding of inconsistencies between Plaintiff's allegations of symptoms and the record evidence. ….

>He also discussed his diverticulitis, and stated during flare-ups he had to use the restroom about 6 to 10 times a day (stating he suffers this a couple of days a week), but this is not work preclusive, and the rate of flare-up is not necessarily supported at that level of frequency or severity.

Id.  She noted, "He did not testify to any medication side effects."  Id.

The ALJ summarized the record evidence regarding each of Plaintiff's physical impairments, id., at 20-22, and his mental health condition.  Id., at 23-24.  In doing so, she noted Plaintiff's foot "pain was improved with only conservative treatment.  The [ALJ] notes that the claimant also reported activities, which included shooting baskets and playing catch with his son."  Id. at 20.  In summarizing the evidence relevant to carpal tunnel syndrome, she noted, "the most recent orthopedic notes in Exhibit 28F makes [sic] no reference to a continued impact from the condition."  Id.

The ALJ summarized the evidence regarding Plaintiff's colitis:

>In relation to the claimant's diverticulitis colitis, the medical evidence of record shows that he had a history of diverticulosis with partial colectomy remote to the onset date.  The claimant went through hospitalizations in 2013, again prior to onset.  He was seen on occasion for report of abdominal pain by his primary care providers and at the emergency department of Neosho Memorial Hospital.  He was found on imaging studies of the abdomen to have mild thickening of the proximal sigmoid colon diagnosed as colitis in May 2015, which was treated with IV antibiotics.  Otherwise, imaging studies of the abdomen did not reveal any significant findings.  There is no record of ongoing specialist evaluation or treatment for diverticulitis colitis.  The record does not show any evidence of significant weight loss from diverticulitis colitis, in fact, the claimant's obesity was considered.  There is no evidence in the recent medical record of symptoms related to the claimant's testimony on the issue.

(R. 21) (citations to the record omitted).

---

This is so because those inconsistencies are relevant to the ALJ's reasons for discounting Plaintiff's allegations of symptoms, as will be discussed hereinafter.

Regarding Plaintiff's mental condition the ALJ noted he went to "the emergency department of Neosho Memorial Hospital with report of increased symptoms of depression and anxiety in December 2016, January 2017, and June 2017, but the claimant reported that he was out of medication on at least two of these occasions." Id. at 23.

**C.     Analysis**

It is important to recognize that at all times through step four of the sequential evaluation process, it is Plaintiff's burden to prove that he is unable to perform his past relevant work. Blea, 466 F.3d at 907; Dikeman, 245 F.3d at 1184; Williams, 844 F.2d at 751 n.2. Only at step five of the sequential evaluation process does it become the Commissioner's burden to show that there are jobs in the economy which are within the RFC assessed between steps three and four—when the burden of proof is Plaintiff's. Id.; Haddock, 196 F.3d at 1088; see also, 20 C.F.R. §§ 404.1520(e), 416.920(e), 404.1545(a)(5), 416.945(a)(5). Thus, if Plaintiff believes the RFC assessed is not sufficiently restrictive he must point to record evidence which compels more restrictive limitations not merely to his own more restrictive allegations.

Plaintiff also appears to argue that an ALJ must point to record evidence demonstrating the error in each limitation alleged. Were that the case, it would place the burden on the Commissioner to prove that a claimant did not have the symptoms alleged or at least that the symptoms alleged were not disabling. Rather, it is the claimant's burden to prove that he cannot perform his past relevant work and that his limitations are disabling. In evaluating a claimant's allegation of symptoms, an ALJ need only explain her rationale for discrediting a claimant's allegations and the inconsistencies she relied

11

upon in making that determination.  The question for the court then becomes whether the rationale given is reasonable and supported by the evidence and whether the evidence relied upon is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Perales, 402 U.S. at 401.

As noted above the ALJ discounted Plaintiff's allegations because they are not consistent with the record evidence "for the reasons explained in th[e] decision."  (R. 19). Throughout the decision, the ALJ noted the inconsistencies she found between Plaintiff's allegations and the record evidence—many of which the court noted in its summary of the ALJ's review of the evidence.   She noted:  Plaintiff's testimony of significant weight gain due to inactivity which had not been at a medical provider's advice; Plaintiff's testimony he had been advised not to stand for more than 30 minutes at a time, but the lack of any documentation of that advice in the record; and that recent orthopedic treatment notes made no mention of any impact from carpal tunnel syndrome.

Regarding colitis particularly, the ALJ found it not work-preclusive and the rate of flare-ups are not represented in the evidence at the frequency or severity alleged by Plaintiff.  She noted the hospitalization in 2013 was before the date of alleged onset of disability and the partial colectomy (in 2008) was "remote to the onset date."  Id. at 21. She noted that other than the May 2015 mild thickening of the proximal sigmoid colon which was treated with IV antibiotics, "imaging studies of the abdomen did not reveal any significant findings."  Id.  She noted no record of ongoing specialist treatment for colitis.  Id.  She noted Plaintiff had not lost weight due to colitis and was, in fact, obese. Id., see also, R. 42 ("I gained a lot of weight [over the past year or so] due to not being

able to be very active."). She noted, "There is no evidence in the recent medical record of symptoms related to the claimant's testimony on the issue [of colitis]." (R. 21).

All of the reasons offered by the ALJ to discount Plaintiff's allegations are supported by the record evidence and tend to detract from those allegations. Plaintiff does not point to record evidence which compels a contrary finding and the court finds none. This court's decision in Andria N. C. is distinguished from the facts of this case and does not require a different result. In that case, the ALJ found that the claimant had migraine headaches "from time to time which are typically resolved with medication, but he did not find that 'from time to time' is less than two or three times a month or that migraines 'from time to time' would require missing less than two days work per month on a regular and continuing basis." 2021 WL 2222681 at *5. Here, the ALJ did not leave such an ambiguity. Rather, she found inconsistencies between the record evidence and Plaintiff's allegations and that his allegations of the rate, frequency, and severity of flare-ups were not supported. Plaintiff has not met his burden to prove otherwise.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated August 16, 2022, at Kansas City, Kansas.

s/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**
